# Beadle v. Steele.

*Bill in Equity by Executors, to enforce Payment of Decree out of Lands as Assets.*

1. *When lands descended or devised will be subjected in equity to payment of debts.*—A court of equity will, at the suit of a creditor of the estate of a deceased person, enforce payment of his debt out of lands

[Beadle v. Steele.]

descended or devised, and in the possession of the heirs or devisees, when it appears that the personal assets were originally insufficient, or that they have been wasted by the personal representative, and that all legal remedies against him and his sureties have been exhausted, or would be unavailing because of their insolvency.

2. *Lands as assets.*—Lands which had been sold by the decedent in his life-time, and which have been accepted by the personal representative, with the sanction of the court, in compromise and settlement of the debt for the unpaid purchase-money, are assets in his hands, and subject to sale for the payment of debts.

3. *Same.*—While lands descended or devised are charged by statute with the debts of the decedent, after the personal assets have been exhausted, they can not be sold to pay the costs and expenses of administration, when no debts of the decedent are shown.

4. *Retainer by executor or administrator, and consequent extinguishment of debt.*—When assets come to the hands of an executor or administrator, the title and ownership of which he can lawfully transfer, it is his right and duty to retain enough to pay a debt due to himself; the law makes the application, and his debt is extinguished.

5. *Sale of land under chancery decree; estoppel against executors.* When lands are sold by an administrator *de bonis non*, under an order of the Chancery Court in an administration suit, and the sale is confirmed, they cease to be assets, and can not be again sold as the property of the estate, although the purchase-money is unpaid; and the administrator being charged on final settlement with the unpaid purchase-money, at the instance of the executors as creditors, who were parties to the administration suit, they are estopped from impeaching the sale, or asserting that the land is the property of the estate, although they were not parties to a suit filed against the administrator by one of the legatees, who became the purchaser at the sale, and to whom the administrator, under an order of the court in that suit, executed a conveyance in satisfaction of the legacy.

6. *Claim of executor as creditor; waiver by agreement with his successor in administration, and course of dealing with legatees.*—When an executor, having in his hands personal assets more than sufficient to pay his own debt, voluntarily turns over all the assets to the succeeding administrator, and resigns, under an agreement that, for any balance found in his favor on final settlement of his accounts, a decree should be rendered payable out of the first moneys collected; the effect of the agreement is that he will look to his successor personally for payment out of the first money collected; and having disabled himself, by his conduct and course of dealing with some of the legatees, to require that they shall refund, he has no recourse against the others.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed on the 20th February, 1883, by Joshua H. Beadle and William H. Echols, the latter suing as administrator of the estate of William Echols, deceased, against Joseph C. Steele, as administrator with the will annexed of Adam Hall, deceased, and Patrick H. Moore; and sought to subject a certain tract of land, in the possession of said Moore, to the payment and satisfaction of a claim or demand asserted by the complainants as creditors against the estate of said Hall. Adam Hall died in said county of Madison, in the year 1857, and his last will and

testament was there duly admitted to probate. By one item of his will, the testator gave a legacy of $4,000 to Mrs. Margaret Moore, for life, with remainder to her children, one of whom was said Patrick H. Moore. Joshua H. Beadle and William Echols were nominated as executors of the will, and letters testamentary were granted to them on the 29th June, 1858. On the 9th September, 1861, the executors filed a bill in said Chancery Court, against the widow, the legatees and devisees, including Mrs. Margaret Moore and Joseph C. Steele, asking the court to take jurisdiction of the administration, to direct them in the discharge of their duties, and to make a final settlement of the estate. On an annual or partial settlement made by the executors in the Probate Court, in August, 1861, an "extra allowance" of $2,500 was made to them, and a balance of $2,577.92 in their favor was ascertained and decreed. William Echols died during the year 1864, and letters of administration on his estate were afterwards granted to said W. H. Echols. Beadle continued to act as surviving executor. At the December term, 1866, a decretal order was entered in said chancery cause, requiring said Beadle, as executor, to pay the legacy of $4,000 to Mrs. Moore, taking from her a bond conditioned for the return of the money, on her death, to her children, as remainder-men; and further directing that, if such bond was not given within twenty days, the money should be paid by the executor to the register of the court, and be by him loaned out on interest. No bond was given, and the money was not paid over to the register.

In May, 1867, Beadle resigned as executor, and letters of administration with the will annexed were granted to said Joseph C. Steele, under a written agreement between the several parties interested in the estate, which was entered of record in the chancery suit, in these words: "It is agreed that Joshua H. Beadle shall resign as the surviving executor of the will of Adam Hall, and shall turn over to his successor all the bonds, notes, judgments, and other assets which he now holds; that these shall be rendered (?) as assets of Hall's estate, and he discharged to that extent; that he shall make a final settlement, in which he shall be charged with all with which he is chargeable, save such notes, bonds, and judgments, and shall be allowed all proper credits. But an account shall be stated, in which shall be embraced all the assets with which he is chargeable, whether they belonged to the general fund, or to particular legatees or devisees;

and he shall be credited by all payments made by him, whether on account of the general fund or particular legatees and devisees, and by such compensation as may be allowed him; and if a balance is found in his favor on that accounting, a decree to be rendered for it payable out of the first money collected; and his successor to become responsible for all attorneys fees and costs, for which he is liable as executor, to be paid out of the assets,"

A short time before the death of the testator, he had sold to Add. White a tract of land near Huntsville, containing about seventy acres; and after his death, the purchase-money being unpaid, White executed his promissory note, with surety, payable to the executors, for the amount due. Some partial payments were made to the executors on this note, but the greater part of the debt was unpaid. In June, 1867, a decretal order was entered in the chancery cause, authorizing the administrator (Steele) to compromise the bad and doubtful debts due the estate; and acting under this authority, he accepted from White, in compromise and settlement of this debt, a deed conveying this tract of land, which recited the facts on which it was founded. This compromise was reported to the Chancery Court, and was confirmed at the December term, 1867; and it was then further ordered, that the administrator, "under the superintendence and direction of the register, sell said lands on a credit of twelve months, the purchasers giving bond with approved sureties, and a lien being retained on the land until payment."

On the 24th October, 1867, an original bill was filed in said court by Mrs. Moore, against her children as defendants, praying that she might be allowed to invest the legacy of $4,000 in real estate, taking the title to herself for life, with remainder to them; and a decree to that effect was rendered in June, 1868. Under the decretal order of sale in the administration suit, the administrator sold the tract of land on the 10th February, 1868, Mrs. Moore becoming the purchaser of several lots, or subdivisions of the tract, containing in all about forty acres, at the aggregate price of about $4,500. The administrator reported the sale to the court, on the 30th May, 1868, and stated that all of the purchasers had given bond with security for the payment of the purchase-money except Mrs. Moore, as to whom he added: "The said Margaret Moore is a legatee under the will of Adam Hall, of a life interest in his estate, to an amount probably equal to, if not more than the amount of

[Beadle v. Steele.]

her purchases at said sale. The mode of receiving [securing?] the purchase-money of the land bought by her is left to the discretion of the court, under the bill in this court filed by her seeking instructions as to the investment of said legacy from said Adam Hall." This report was approved and confirmed, without objection, at the June term, 1868. No order was made in reference to this purchase, in the suit in which Mrs. Moore was complainant, until after her death, when, in December, 1874, on the petition of her children, then all of full age, the register was ordered to execute to them a conveyance of the land. The conveyance was duly executed, and Patrick H. Moore afterwards acquired by purchase the entire interest in the land. This is the land which the complainants sought to subject to the satisfaction of their claim against the estate.

In the administration suit, on the 14th October, 1867, a bill of revivor and supplement was filed by Steele as administrator, to compel a final settlement of the accounts of Beadle and Echols as executors; and after sundry proceedings, a final settlement was made in January, 1881, by which a balance of $3,956 was ascertained and decreed in their favor, with interest from July 1st, 1879, and an additional allowance of $500 as compensation to their solicitors. On this decree an execution was issued against Steele as administrator, which was returned "No property found," and another against him personally, and his sureties, on which was the same return. The bill alleged that he and his sureties were insolvent, and sought to subject the land, as assets of the estate, to the satisfaction of this decree.

On final hearing, on pleadings and proof, the chancellor dismissed the bill; and his decree is now assigned as error.

HUMES & SHEFFEY, and CABANISS & WARD, for appellants. (1.) A court of equity has original jurisdiction of the trusts of an administration, whether created by will, or arising by operation of law, first, to compel the appropriation of the assets to the payment of the debts, and then to the satisfaction of legacies, or, in case of intestacy, to the claims of distributees.—1 Story's Equity, § 530. The court is not divested of this jurisdiction, because of the jurisdiction, concurrent as far as it goes, conferred on the Probate Court by constitutional and statutory provisions—Cases cited in 1st Brick. Digest, 647, § 120; 3 Ib. 334, § 61. When a bill is filed invoking this jurisdiction, all persons interested in the

27

estate must be made parties, either as plaintiffs or as defend-
ants.—*Gould v. Hayes*, 19 Ala. 438; *Chapman v. Hamilton*,
19 Ala. 121; *Hartley v. Bloodgood*, 16 Ala. 233; *Bogan v.
Camp*, 30 Ala. 276; *Teague v. Corbitt*, 57 Ala. 529. (2.)
The bill filed in 1861 by Beadle and Echols, as executors,
invoked this jurisdiction, was very full and broad in its alle-
gations and proof, and brought all the necessary and proper
parties before the court, and the court thereby acquired ex-
clusive jurisdiction of the administration and its trusts.
1 Pom. Equity, § 179. In the exercise of this jurisdiction,
the Chancery Court acquired all the statutory powers con-
ferred on the Probate Court.—1 Brick. Digest, 649, §§ 142-3;
3 *Ib.* 337, §§ 90-91. This gave the power to render a
decree in favor of the retiring executor or administrator,
on final settlement, against his successor in the administra-
tion, for any balance ascertained to be due.—Code, §§ 2173-
76. The statute contemplates that this balance, when ascer-
tained, shall stand upon the same footing as if it were the
debt of the testator or intestate; that is, if the estate is sol-
vent, payment may be enforced by execution against the
succeeding administrator and his sureties, in the same man-
ner, and by the same remedies, as in case of any other judg-
ment debt; and in case of intestacy, if the debt is for a pre-
ferred claim, it must be so certified and allowed.—Code,
§ 2079. (3.) The decree in favor of the executors, the
complainants in this suit, was rendered in the administra-
tion suit, after a contest with the parties in adverse interest;
and it is as conclusive as any other judgment or decree,
as to all the facts decided, or necessarily involved, which
includes the right of retainer, and the allowance of extra
compensation; and these questions can not be again litigated
between the parties. The original suit had become suspended,
by the death of one of the executors, the resignation of the
other, and the appointment of an administrator *de bonis non*;
but, when this chasm in the suit was filled by the revivor
and supplement, the continuity of the proceedings was not
broken, and all parties to the suit are bound by the subse-
quent proceedings. (4.) The lands involved in the suit
are not to be regarded as lands devised or descended, but as
personal assets of the estate; having been sold and conveyed
by the testator while in life, and taken back by the personal
representative, with the sanction of the court, in payment of
the debt for the unpaid purchase-money.—*Foscue v. Lyon*,
55 Ala. 440. But, if considered as lands which have been

[Beadle v. Steele.]

sold under the decree of the court, the purchase-money re-
maining unpaid, and the personal representative being
estopped from avoiding the sale, the complainants are not
estopped from asserting their rights as creditors of the
estate.—1 Johns. Ch. 306; 2 N. J. Eq. 66; 11 N. J. Eq.
389; 5 Porter, 64; 18 Ala. 828; 12 Ala. 98; 56 Ala. 321;
36 Ala. 50; 1 Story's Equity, § 92.

R. W. WALKER, *contra.*—(1.) The complainants seek to
subject lands to the payment of their claims, but do not
show that it is a debt of the estate, or that there are debts
of the estate to the satisfaction of which lands can be sub-
jected.—Code, 1875, §§ 2447-50; *Quarles v. Campbell,*
72 Ala. 64; *Garrett v. Garrett,* 64 Ala. 263; *Sermon v.
Black,* 79 Ala. 507; *Sharp v. Sharp,* 76 Ala. 312; *Dar-
rington v. Borland,* 3 Porter, 728; *Cruikshanks v. Luttrell,*
67 Ala. 318. (2.) The complainants' claim, on the facts
shown by the record, is satisfied and extinguished by oper-
ation of law.—*Miller v. Irby,* 63 Ala. 477; *Trimble v. Fariss,*
78 Ala. 270; *Cook v. Cook,* 69 Ala. 294; *Dickie v. Dickie,*
80 Ala. 57; *Kirksey v. Kirksey,* 41 Ala. 626; *Moore v.
Lescuer,* 33 Ala. 237; *Taylor v. McCall,* 71 Ala. 52. (3.)
The agreement under which Beadle resigned as executor,
and undertook to look to his successor in the administration
for payment of his claim, was not binding on the children
of Mrs. Moore, who were infants; and if it was ever binding
on them, it is long since barred by the statute of limitations.
*Vanderveer v. Ware,* 65 Ala. 606; *Scott v. Ware,* 64 Ala.
174; *Steele v. Steele,* 64 Ala. 456; *Teague v. Corbitt,* 57 Ala.
529; *Trimble v. Fariss,* 78 Ala. 260; *Rogers v. Grannis
& Co.,* 20 Ala. 247; *Cannon v. Copeland,* 43 Ala. 252. (4.)
The fact that Steele, the succeeding administrator, has
squandered the assets of the estate, or that he and his sure-
ties have become insolvent, does not give the complainants
any remedy or recourse against Mrs. Moore's children, or
against their lands. They might have protected themselves,
and their loss is attributable to their own *laches* only.—*Sims
v. Sims,* 2 Stock. N. J. 158; *Walcott v. Hall,* 2 Beav. 305;
1 P. W. 495; Rice, So. Car. 198-240; *Lupton v. Lupton,*
2 John. Ch. 614-26; *Wyse v. Smith,* 4 Gill & J. 295; 31
Penn. St. 53; 2 Hill's Ch. (S. C.) 457.

CLOPTON, J.—The claim of appellants originated as
follows: Joshua H. Beadle and William Echols, as execu-

tors of the will of Adam Hall, which was admitted to probate, in June, 1858, filed a bill in the Chancery Court, to obtain a construction of the will, and the directions of the court in the administration of the estate. William Echols having died during the pendency of the suit, it was continued in the name of Beadle, the surviving executor, who resigned his executorship in May, 1867, under an agreement, which will be hereinafter noticed; and the appellee, Joseph Steele, was appointed administrator *de bonis non*, with the will annexed. On a supplemental bill filed by Steele, a final settlement of the administration of the executors was made, and a decree rendered, in January, 1881, in favor of Beadle and William H. Echols as administrator of William Echols, against Steele, as administrator *de bonis non*, for the sum of three thousand, nine hundred and fifty-six dollars, and also for the sum of five hundred dollars as compensation to their solicitors, with interest on each from July 1, 1879. The present bill is filed by them, to condemn the land therein mentioned to the payment of this decree. The bill avers a deficiency of personal property, its waste by the administrator *de bonis non*, the issue of execution on the decree, the return of "no property", and the insolvency of Steele and his sureties. Complainants' title to relief is rested on the doctrine, that a court of equity will give aid to a creditor of the estate of a deceased person, and enforce payment of his debt out of lands descended or devised, in the hands of the heir or devisee, when it appears that the personal estate was originally insufficient, or has been wasted by the personal representative, and that all legal remedies would be unvailing in consequence of their insolvency.

The land sought to be subjected constituted a part of a larger tract of land, which was sold by the testator in his life-time, and which Steele, as administrator, took and received from the vendee in compromise and settlement of the unpaid purchase-money. The compromise was reported to, and confirmed by the Chancery Court. Having been acquired by the personal representative, in payment of a debt due the testator, the land became assets of his estate, and subject to sale for distribution, or for the payment of debt, in the same manner as if it had descended or been devised.—*Cruikshanks v. Luttrell*, 67 Ala. 318.

On the annual settlement made by the executors in the Probate Court, in August, 1861, an allowance of twenty-five hundred dollars for special services was made to them. This

allowance was brought forward as a credit, on the final set-
tlement in the Chancery Court. But for this credit, and the
commissions allowed on the final settlement, there would
have been no balance due the executors. It is, therefore,
manifest that the balance, for which the decree was rendered
in their favor, consists of the usual commissions and the
allowance for special services. By statute, all the property
of a decedent, except such as is declared exempt, is charged
with the payment of his debts, and may be sold for the pay-
ment of the same. This charge the personal representative
can not defeat, by a distribution of the lands among the
heirs or devisees, before the debts are paid. The statute,
however, has been construed as charging the lands with
debts owing by the decedent at the time of his death; and it
has been held that they can not be sold to pay the costs and
expenses of administration, when no debts of the decedent
are shown for the payment of which the lands are liable un-
der the statute.—*Garrett v. Garrett*, 64 Ala. 263; *Sermon v.
Black*, 79 Ala. 507. It follows, that complainants are not
entitled to subject the lands to the payment of the decree, as
*descended* or *devised*. But, as we are not prepared to hold,
that a personal representative, by converting personal assets
into real estate, can thereby deprive a creditor of the right
to subject such real estate to his debt, the same as he would
have had to subject the personal estate so converted (which
question we do not decide), we shall consider the equity of
complainants on the theory, that the purpose of the bill is to
subject assets in the hands of a legatee, the assets otherwise
being insufficient to pay the decree.

On this question, the character of complainants' claim,
the possession by the executors of personal assets which they
could have appropriated to the payment of the claim, their
voluntary payment of some of the legacies, their duty to pay
the legacy to Mrs. Margaret Moore and her children, and the
agreement under which the surviving executor turned over
the assets to the administrator *de bonis non*, are all proper
matters for consideration, and materially affect the equity of
complainants. It is well settled, that an executor or admin-
istrator is not only authorized, but it is his duty, to apply to
the payment of a debt due him by an estate which he rep-
resents, assets which came to his possession, and the title
and ownership of which he can legally transfer. He has no
volition or election in the matter; the law, by its own opera-
tion, makes the application; and no *laches* on the part of the

[Beadle v. Steele.]

personal representative, and no indiscretion in distributing
or parting with the assets can avoid the result. By quali-
fying as executor or administrator, and taking upon himself
the right and duty to demand and receive, and the concur-
rent obligation to pay, the claim will ordinarily be regarded
as extinguished.—*Miller v. Irby*, 63 Ala. 477; *Trimble v.
Fariss*, 78 Ala. 260; *Dickie v. Dickie*, 80 Ala. 57. While
it may be that the decree in favor of the executors, having
been rendered on their final settlement, is conclusive that
their claim was not extinguished as against the succeeding
representative, the right and duty of retainer has an impor-
tant bearing upon the equity of complainants, to subject
property in the hands of legatees or distributees to whom it
has been distributed by the succeeding administrator; especi-
ally when the relation of personal representative of the
estate and legatees or distributees previously existed, and
the claim sought to be enforced is for compensation to the
former representative. It clearly appears that the executors
had in their hands at the time, and subsequent to the allow-
ance of the claim by the Probate Court, assets largely more
than sufficient to pay the claim, which they could have legally
appropriated to that purpose.

The land sought to be condemned was sold in February,
1868, under an order of the Chancery Court, and purchased
by Mrs. Moore. By the will of the testator, a legacy of four
thousand dollars was bequeathed to her, the interest on
which she was entitled to use during her life, and at her
death the principal to be equally divided among her chil-
dren. In December, 1866, the Chancery Court had ordered
Beadle, as executor, to pay the legacy to Mrs. Moore, on her
executing bond conditioned that the principal should be
paid to her children at her death; and if she failed to exe-
cute such bond within twenty days after the adjournment of
the court, that he should pay the same to the register, to be
loaned out, and the interest paid annually to her. She
failed to execute the bond, and the executor failed to pay the
money to the register. The sale of the land, and its pur-
chase by Mrs. Moore, was reported by the register to the
court, and his report was confirmed. In his report, the reg-
ister submits the mode of receiving the purchase-money of
the land to the direction of the court, under a bill which had
been filed by Mrs. Moore, asking directions as to the invest-
ment of the legacy. The court subsequently directed that
the legacy should be invested in real estate, and the title

taken to her for her life, with remainder to her children. She thereupon paid the purchase-money by receipting to the administrator *de bonis non* for the amount of the legacy. No conveyance having been made to Mrs. Moore during her life, the court ordered the register, after her death, to make a conveyance to the children, which he did. Appellee Moore is one of the children, and has acquired the title of the others. The executors were not parties to this bill, and they insist that these orders of the Chancery Court are not binding on them. This may be conceded; but, on the final settlement of the administrator *de bonis non*, to which they were parties, he was charged with the purchase-money of the land; but, on their objection, the receipt for the legacy was not allowed as a voucher of credit. The land, having been sold under a valid and regular order, and the sale confirmed by the court, ceased to be assets of the estate, notwithstanding the purchase-money may not have been paid; and, until the sale is vacated and set aside, can not be again sold as the property of the estate. The executors, having charged the administrator with the purchase-money, and a decree having been rendered against him, elected to affirm the sale so far as they had capacity, and are estopped to assert the land is the property of the estate.

The failure of the executor to pay the amount of the legacy into the registry of the court, as ordered, can not be attributed to a want of money. He had in his hands more than enough to pay the legacy, which he loaned out on interest, and thus converted. We say converted, for, by the will, the executors were authorized to loan on interest *only* the money remaining after paying the debts and *legacies*. Also, the executors paid some of the pecuniary legacies without, so far as appears, requiring refunding bonds, with knowledge of their claim, and thus disabled themselves to compel such legatees to refund.—*Moore v. Lesueur*, 33 Ala. 237. Also, Beadle, the surviving executor, resigned his executorship, and turned over to the succeeding representative assets of the value of more than twenty thousand dollars, consisting principally of notes taken by the executors for money loaned by them, under an agreement that he would resign, and turn over all the assets of the estate to his successor, and make a final settlement, and, if any balance be found in his favor, that a decree should be rendered payable out of the first money collected. Considering that the executor had the right of retainer, and possession of assets more

[Queen Insurance Co. v. Young.]

than sufficient to pay his claim, which he could legally apply, and voluntarily parted with them by turning them over to his successor in the administration, the effect of the agreement is, that he would look to his successor personally for the payment of the same, out of the first money collected by him.

The right of a creditor to compel a legatee, whose legacy has been paid, to refund, when the assets of the estate are insufficient to pay the debts, or have been wasted by the representative, may be lost by a course of dealing which renders the assertion of such right inequitable.—2 Williams on Ex'rs, 1501. When all the facts and circumstances discovered by the record—Beadle's conduct, and course of dealing, his having disabled himself to compel some of the legatees to refund—are considered, and the foregoing principles of equity applied to the various aspects of the case, and their co-operative effect regarded, to subject to his claim property in the hands of particular legatees, to whom it had been delivered by the administrator *de bonis non* in satisfaction of their legacy, which legacy Beadle had been ordered to pay, and failed when he had sufficient assets to do so, and impose the entire burden of the claim upon such legatees, would be inequitable, though actual wrong or fraud was not intended.

Affirmed.