Lake Forest Property Owners' Association, Inc. ("the Association"), appeals from a declaratory judgment in favor of James C. Smith, Diane Millar, James Childs, and Susan D. Bedford, all members of the Association, *Page 1048 
holding that the Association's board of directors was without authority to cast certain "residual" votes at its annual meeting.
The stipulated facts pertinent to this appeal are as follows: From 1971 until 1979, Lake Forest, Inc., developed and operated a "planned unit development" in Baldwin County, Alabama, that consisted of approximately 4,200 lots as well as a sewer system, water system, roads, and recreational facilities, including a country club, a golf course, a yacht club, and other amenities. On July 1, 1971, Lake Forest, Inc., granted the Association an option to purchase all of the common facilities in the development. Those common facilities consisted of the country club, the yacht club, the marina, the golf course, the lake, any facilities or area for the common use of Lake Forest members, and the guard and security service. The Association was incorporated on July 29, 1971, at which time it adopted its by-laws.
On October 19, 1978, at a special meeting of the Association, the membership voted to exercise the option. At that time, the Association also elected its board of directors. On February 2, 1979, Lake Forest, Inc., sold the common facilities to the Association. In November 1988, Lake Forest, Inc., merged with its parent corporation, Purcell Company, Inc. ("Purcell").
On October 16, 1989, the Association held its annual meeting, for the primary purpose of electing four members to the board of directors. The by-laws required that at least two people be nominated for each vacancy; consequently, the nominating committee recommended eight persons for the four available positions in the proxy it sent with the notice of the meeting. Prior to the meeting, several members, referred to as the "reform group," circulated a proxy proposing its own slate of directors.
The applicable section of the Association's by-laws dealing with voting states, in part:
 "3.7. Voting. Each full Voting Member shall be entitled to one vote for each lot owned for which dues, charges, initiation fee and assessment are current, for the election of each member of the Board of Directors and one vote for each and every action which may require a vote of the membership of the Corporation; provided however, Lake Forest, Inc., or its successor, shall be entitled to cast the number of votes equal to one vote for each quarter (1/4) acre of property which it owns in Lake Forest Development, for the election of each Director of the Board and for each and every other matter which may require a vote of the membership of the Corporation."
(Emphasis added.)
Two weeks prior to the annual meeting, the Association's board of directors adopted a resolution that instructed the president to cast a total of 1,227 votes for its nominees. Of those votes, 1,184, the "residual" votes, represented each 1/4 acre of real property referred to in section 3.7 of the by-laws (the common areas), while 43 of the votes represented lots the Association owned. Pursuant to the resolution, the president also cast the same number of votes, 1,227, in favor of two amendments to the by-laws and in favor of a dues increase from $27.50 to $35.00 a month.[1] The results of the board of directors election were as follows:
 Votes Received Without Total Votes "Residual" Votes VotesBoard's Nominees Received RepresentingLots Owned
Coxwell 1,905 678 Sadler 1,691 464 Yoder 1,665 438 Agostinelli 1,635 408 Coats 431 431 *Page 1049 
Debrule 349 349 Deloney 317 317 ----- 3,085 (45%)
Reform Group Total Votes Nominees Received
Smith 851 Millar 804 Childs 793 Bedford 702 Studdard 402 Maye 264 ------ 3,816 (55%)
The trial court entered an order based on the stipulated facts and made the following conclusions of Law:
 "1. That Defendant, Lake Forest Property Owners' Association, Inc., is not a 'Successor' of Lake Forest, Inc., as that term is intended in Section 3.7 of the By-Laws of Lake Forest Property Owners' Association, Inc.
 "2. That Defendant, Lake Forest Property Owners' Association, Inc., was without authority to cast 1,184 votes representing one vote per quarter acre of real property owned by Defendant, for the election of Directors or for an increase in the dues.
 "3. That Defendant, Lake Forest Property Owners' Association, Inc., did have authority to cast 43 votes representing lots owned by Defendant for the election of Directors and for an increase in the dues. . . . [T]he increase in dues is adjudged to have been defeated and the vote for Directors is adjudged to have been as follows:
"Smith 851
Millar 804
Childs 793
Coxwell 721
Bedford 702
Sadler 507
Yoder 481
Agostinelli 451
Coats 431
Studdard 402
Debrule 349
Deloney 317
Maye 264"
The Association argues that, by virtue of its purchase of the common amenities and its assumption of the obligations of Lake Forest, Inc., it is the "successor" to Lake Forest, Inc., as that term is used in section 3.7 of the by-laws. The reform group nominees argue that Purcell, rather than the Association, is the successor to Lake Forest, Inc.
We recognize initially that because the facts below were undisputed, the ore tenus rule is inapplicable in this case. Instead, "the appellate court shall sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court's application of the law to the facts." Justice v.Arab Lumber Supply, Inc., 533 So.2d 538, 542 (Ala. 1988) (citations omitted).
It is generally acknowledged that there is no precise legal definition of "successor" that would be applicable in all contexts. Safer v. Perper, 569 F.2d 87, 95 (D.C. Cir. 1977). Rather, the determination of whether an entity is a "successor" is made on a case-by-case basis according to the facts. HowardJohnson Co. v. Detroit Local Joint Executive Board,417 U.S. 249, 256, 94 S.Ct. 2236, 2240, 41 L.Ed.2d 46 (1974).
Although there are no Alabama cases dealing with the definition of "successor" *Page 1050 
in the precise factual context presented here, First NationalBank of Birmingham v. Adams, 281 Ala. 404, 410, 203 So.2d 124,129 (1967), supports the reform group's argument that Purcell, by virtue of the merger with Lake Forest, Inc., is, in fact, the successor to Lake Forest, Inc.:
 "We think that it is clear under the Alabama decisions and indeed the decisions of most if not all jurisdictions, that the surviving corporation in a merger situation is the successor to the constituent corporation. If it is not the successor to the constituent corporation, what is it with regard thereto?"
In this case, the purchase agreement between Lake Forest, Inc., and the Association refers several times to Lake Forest, Inc., and "its successors," without mentioning the Association as its "successor." Indeed, that agreement makes it clear that the Association was the purchaser of the common facilities rather than the successor to Lake Forest, Inc. "In the non-labor contractual cases, 'successor' has often been defined as 'one who takes the place that another has left, and sustains the like part or character.' " Safer, 569 F.2d at 95, quotingWawak Co. v. Kaiser, 90 F.2d 694, 697 (7th Cir. 1937) (citations omitted). After the merger, Purcell took the place that Lake Forest, Inc., left, and Purcell now stands in its place as the owner of the 800 unsold lots that Lake Forest, Inc., retained when it sold the common facilities to the Association. Therefore, the trial judge's holding that the Association is not the successor to Lake Forest, Inc., as well as his determination that the Association did not have the authority to cast the 1,184 residual votes, is affirmed.
The reform group also argues that the trial judge erred in ruling that the president of the Association's board of directors properly cast 43 votes for the dues increase and for the board's nominees. Section 2.4 of the Association's by-laws, entitled "Dues, Charges and Assessments," specifically states that "[t]he Board of Directors [has] no authority to increase dues." We agree with the reform group that the board of directors may not do indirectly (by casting 43 votes for the number of lots the Association owns) what it is prohibited from doing directly.
With regard to the 43 votes cast for the board's nominees, the reform group argues that the Association never qualified itself as a "full voting member" pursuant to section 2.1 of the by-laws and, thus, was not entitled to vote based on the number of lots it owned. Section 2.1 of the by-laws reads, in part, as follows:
 "Section 2.1 Persons Who Shall be Members: The membership of the Corporation shall consist of two classes of members: the first class of which shall be called Full Voting Members; the second class of which shall be called Associate Members.
 "The Full Voting Membership shall be limited to those persons who purchase lots in the Lake Forest development from Lake Forest, Inc., or its successors, on or after July 1, 1971. . . .
". . . .
 "In the event a lot is purchased by a corporation, the corporation must immediately designate an individual who will be the club member. This individual must go through the process of applying through the membership committee. When approved this member must then sign a notarized statement that he will be responsible for dues, charges, assessments, including interest on such charges, assessments, collection costs and attorney's fees."
There is no evidence in the record that the Association ever designated any individual to represent the 43 lots it owns. Moreover, there is no evidence that any dues have been paid on those 43 lots. The beginning of section 3.7 reads: "EachFull Voting Member shall be entitled to one vote for each lot owned for which dues, charges, initiation fee and assessment are current. . . ." Thus, the Association did not have the authority to cast 43 votes for either the nominees or the dues increase, and the trial judge's holding to the contrary is reversed.
The judgment of the trial court is affirmed in part and reversed in part and the *Page 1051 
cause is remanded for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
[1] The two amendments were defeated and are not a subject of this appeal.