This case involves the question whether injuries suffered by Glenn E. Skelton arose "out of the ownership, maintenance or use" of an uninsured automobile as required for him to be covered under the terms of an automobile liability insurance policy issued to him by Allstate Insurance Company. We conclude that they did not.
 FACTS
These facts, taken primarily from the trial court's order, are undisputed: On March 10, 1993, between 10:00 and 11:00 p.m., Skelton was driving his automobile south on Interstate Highway 65 in Mobile. He and his 16-year-old son Ian were returning from Birmingham, where they had attended the funeral of Skelton's father-in-law. A family friend, Elaine Mixon, and her 16-year-old son were also driving back to Mobile from the same funeral. They were traveling ahead of the Skelton vehicle on I-65. By prearrangement, the two vehicles were traveling together. As the Mixon vehicle approached the Moffat Road interchange, a third vehicle, driven by Milyce A. Wright and occupied by her husband Dell L. Wright as a passenger, pulled out from Moffat road onto the right south-bound lane of I-65 in front of the Mixon vehicle. The Wright vehicle began engaging in dangerous and reckless maneuvers on the highway, including slowing down abruptly and speeding up rapidly, for no apparent reason. This caused Mixon to slam on her brakes each time the Wright vehicle slowed down abruptly. There was moderate to heavy traffic on I-65 at the time. Mixon flashed her lights once at the Wright vehicle in front of her during these dangerous maneuvers. As soon as she could safely do so, Mixon pulled around the Wright vehicle on the left and passed it; thereupon, the Wright vehicle speeded up and passed the Mixon vehicle at a high rate of speed on the left shoulder of the highway, almost hitting a median barricade. Dell Wright, who was sitting in the passenger's seat, then started throwing objects out of his vehicle; some of those objects hit the Mixon vehicle. Mixon was not sure what the objects were and thought they may have been pieces of gravel or ice. The Wright vehicle then pulled alongside the Mixon vehicle, began sliding to its right toward Mixon, and forced the Mixon vehicle off the road onto the right shoulder of I-65 just north of the Airport Boulevard interchange.
The driver of the Mixon vehicle stopped to avoid colliding with the Wright vehicle, and the Wright vehicle stopped just in front of Mixon. Mixon was then holding her automobile telephone in her hand. Immediately after the two cars stopped, Dell Wright got out of his vehicle and walked in front of the Mixon vehicle. He stood in front of it holding a pistol, which he pointed at Mixon while he shouted obscenities at her and threatened to kill her. He smashed the windshield of Mixon's vehicle with the butt of the pistol he was brandishing.
Glenn Skelton, who had been traveling behind the Mixon vehicle, observed the dangerous and reckless movements of the Wright vehicle and tried to keep up with Mixon as she passed the Wrights. He saw an arm coming out of the passenger window of the Wright vehicle and making a throwing action. *Page 379 
He saw the Wright vehicle force the Mixon vehicle off the road. Skelton negotiated through the traffic and stopped ahead of the other two vehicles on the shoulder of I-65. After coming to a stop, he backed his vehicle and stopped three or four feet in front of the Wright vehicle. Skelton immediately got out of his car and walked to the rear, toward the Wright and Mixon vehicles, to assist Mixon. He saw Dell Wright menacing Mixon with the pistol, and he saw Mixon's broken windshield. Dell Wright turned and walked toward Skelton. When Skelton was even with the right rear wheel of the Wright vehicle, Dell Wright struck Skelton with a pistol on the left side of the face. As Skelton staggered and began to fall, Wright struck him again with the pistol in the left jaw. Skelton was dazed and only partially conscious. Milyce Wright was outside her vehicle at the time of the assault on Skelton. She and her husband got back into their automobile and drove off. Mixon dialed 911 on her automobile telephone; law enforcement and medical personnel arrived soon thereafter. Skelton suffered serious and painful injuries. He was flown to the Eye Foundation Hospital in Birmingham for specialized medical attention and was hospitalized for several months. He suffered skull fractures and damage to his sinuses and permanently lost the sight in his left eye. He still requires medical attention and still experiences pain on the left side of his face.
Dell Wright was subsequently convicted of second degree assault, menacing, and reckless endangerment, as a result of these events of March 10, 1993. His convictions have been affirmed on appeal, and he is presently incarcerated.
Allstate is Skelton's automobile insurance carrier. Skelton sued Allstate for benefits under the uninsured motorist coverage included in his Allstate automobile insurance policy. The Wrights were driving an insured vehicle, but their insurance carrier denied coverage. The trial court awarded uninsured motorist benefits based on Skelton's injuries resulting from the encounter with Dell Wright. Allstate appeals.
 ISSUE
The issue here is whether, under these undisputed facts, Skelton's injuries arose "out of the ownership, maintenance or use of an uninsured auto." Only if they did is Skelton entitled to the benefits under the uninsured motorist coverage provided by his policy with Allstate.
 DISCUSSION
When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error. Griggs v. Driftwood Landing,Inc., 620 So.2d 582 (Ala. 1993); First National Bank of Mobilev. Duckworth, 502 So.2d 709 (Ala. 1987). However, where the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the court's judgment carries no presumption of correctness. Beavers v. County of Walker, 645 So.2d 1365
(Ala. 1994). Because no material facts are disputed and this appeal focuses on the application of the law to the facts, no presumption of correction is accorded to the trial court's judgment. Therefore, we review de novo the application of the law to the facts of this case. Beavers, supra; Lake ForestProperty Owners' Ass'n v. Smith, 571 So.2d 1047 (Ala. 1990).
Skelton's Allstate policy provides as follows regarding uninsured motorist coverage:
 "We will pay damages for bodily injury, sickness, disease, or death which a person insured is legally entitled to recover from the owner or operator of an uninsured auto. Injury must be caused by accident and arise out of the ownership, maintenance or use of an uninsured auto."
The contract shall be construed liberally in favor of the insured and strictly against the insurer. Tyler v. InsuranceCo. of North America, 331 So.2d 641 (Ala. 1976). Exclusions are to be interpreted as narrowly as possible, so as to provide maximum coverage for the insured, and are to be construed most strongly against the insurance company, *Page 380 
which drafted and issued the policy. Alliance Ins. Co. v.Reynolds, 494 So.2d 609 (Ala. 1986); Employers Ins. Co. ofAlabama v. Jeff Gin Co., 378 So.2d 693 (Ala. 1979).
This case is controlled by United States Fidelity GuarantyCo. v. Lehman, 579 So.2d 585 (Ala. 1990) ("Lehman I"). In LehmanI, the plaintiff, Lehman, was employed as a salesman at an automobile dealership. He agreed one day to accompany Mark McCauley, who purported to be a potential customer, to McCauley's home in order to pick up McCauley's automobile. Lehman understood that McCauley wanted to use his vehicle as a trade-in on a new car purchase. McCauley and Lehman left the dealership in a vehicle owned by the dealership, with McCauley driving. When they turned onto the street where McCauley lived, McCauley slowed the car, cut Lehman's throat with a switchblade, and said, "I'm going to kill you. You're going to die." After a struggle, Lehman succeeded in getting out of the car, and McCauley drove away. Lehman I, 579 So.2d at 585. Lehman and his wife sued their insurer, USF G, seeking benefits under their uninsured motorist coverage. The USF G policy required, for that coverage, that the insured's injuries "must result from the ownership, maintenance or use of an uninsured vehicle."
The trial court awarded uninsured motorist benefits to the Lehmans. This Court reversed, holding that, as a matter of law, because Lehman's injuries were the result of an independent criminal act by McCauley, they did not result from a "use" of the dealership automobile. Lehman I, 579 So.2d at 586. Therefore, they were not covered under the dealership's policy of insurance and — even assuming that for purposes of the uninsured motorist provisions of their own policy with USF G, the dealership vehicle could be considered to be an "uninsured" vehicle — they were not entitled to recover uninsured motorist benefits. Id.
Like the stabbing in Lehman I, Dell Wright's battery on Skelton was an intervening act that the broke the causal connection between the use of the Wright automobile and the injury. A criminal act, such as the battery in this case, will break the causal chain because no reasonable standard would suggest that an automobile insurer intended to insure against such acts. When an insurance company writes an automobile policy, it covers foreseeable risks associated with the use of the covered automobile. Dell Wright's battery of Skelton was not a foreseeable risk associated with motoring. When Skelton purchased the automobile insurance policy, neither he nor Allstate could reasonably have foreseen the battery and the resulting injuries.
Cases from other jurisdictions construing the phrase "arising out of the ownership, maintenance or use of a motor vehicle" have uniformly required that the injured person establish a causal connection between the use of an automobile and the injury, and that the injury be foreseeably identifiable to the normal use of a vehicle. See generally, Larry D. Schaefer, Annotation, Automobile Liability Insurance: What Are Accidentsor Injuries "Arising Out of Ownership, Maintenance, or Use" ofInsured Vehicle, 15 A.L.R.4th 10, 42-48, 81-86 (1982).
In Wieneke v. Home Mutual Ins. Co., 397 N.W.2d 597
(Minn.App. 1986), the plaintiff and another motorist exchanged heated words at a stoplight, after which the other motorist got out of his car and punched the plaintiff, who was still seated in his own car. In rejecting the plaintiff's arguments that his injuries arose out of the use of the other motorist's car and were therefore covered by the uninsured motorist clause in his own insurance policy, the court stated:
 "Although the fistfight in this case may have been precipitated by the driving conduct of the two men, Weineke's injuries were not actively connected to the maintenance or use of a motor vehicle. The injuries resulted from Beedle's punching him in the nose."
Wieneke, 397 N.W.2d at 599.
In Foss v. Cignarella, 196 N.J. Super. 378, 482 A.2d 954
(1984), Foss was traveling in his motor vehicle down a highway. As he proceeded in the third, or fast, lane of the highway, an automobile being driven by Cignarella attempted to pass him on the left by traveling on the median; in the attempt Cignarella's *Page 381 
vehicle sideswiped Foss's vehicle. Both drivers thereafter stopped their cars on the shoulder of the road. However, Foss's vehicle rolled forward, bumping into the rear of Cignarella's car. Cignarella flew into a rage and ran up to Foss's vehicle and stabbed Foss in the chest while he was seated in his vehicle with the door window partially open. Although Foss did not suffer any injury from the impact between the two vehicles, he sought recovery from the insurer of the vehicle operated by Cignarella for the injuries resulting from the stabbing. In holding that the stabbing did not arise out of the "use of an automobile" — this term having been used in Cignarella's policy provision for liability coverage — the court reasoned:
 "This act of Cignarella, however reprehensible and unfortunate, was not causally connected with his operation of the automobile. It did not originate from the use of the vehicle as such, nor can it be said that it arose out of, or was connected with, the inherent nature of the automobile. At best, the connection between plaintiff's injury and the insured vehicle was that Cignarella's use of the car permitted him to be at the place where he committed his attack upon plaintiff, or, 'but for' his use of the automobile and the ensuing accident, the assault upon the plaintiff would not have occurred. This is not the substantial nexus required between the use of the insured vehicle and the injury to impose liability upon the insurer. But even if it be considered that the stabbing was sufficiently related to the Cignarella vehicle as to constitute conduct arising from his use thereof, it would be unreasonable to conclude that the parties to the insurance contract contemplated that the policy would insure against such an incident."
Foss, 196 N.J. Super. at 384, 482 A.2d at 957.
In Race v. Nationwide Mutual Fire Insurance Co.,542 So.2d 347 (Fla. 1989), a motor vehicle driven by the insured, Race, was rear-ended at a stoplight by a vehicle driven by an uninsured motorist, Thompson. Race walked back to Thompson, who remained in his car, to exchange identification and insurance information. After a discussion about what to do with the cars and whether to telephone the police, Thompson stepped out of his car and asked Race for identification. As Race reached into his bag to remove his insurance papers and identification, Thompson, thinking Race was pulling out a gun, knocked Race to the ground. When Race tried to get up, Thompson hit him again. Race suffered permanent injuries, including broken teeth, a broken jaw, and a fractured hand. Thompson was uninsured; Race sought uninsured motorist benefits from his own insurer. In analyzing the case, the Race court quoted from Appleman,Insurance Law and Practice (Buckley ed. 1979), § 4317:
 " 'The word "coverage" as used in an automobile liability policy means the sum of risks which the policy covers. Ownership, maintenance, or use of the automobile need not be the direct and efficient cause of the injury sustained.
 " 'Rather, the courts have only required that some form of causal relationship exist between the insured vehicle and the accident. However, liability does not extend to results distinctly remote, though within the line of causation.
" '. . . .
 " 'Accordingly, three rather interesting rules have been set up to determine the insurer's liability: 1. The accident must have arisen out of the inherent nature of the automobile, as such; 2. The accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading, or unloading must not have terminated; 3. The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury."
Race, 542 So.2d at 349. In concluding that Race's injuries did not arise out of the use of an automobile, the court stated:
 "The most that can be said is that the driving of the uninsured motorist which caused the accident created an atmosphere of hostility between the parties. It had nothing to do with Race's injuries, which only came about several minutes later when Thompson thought Race was reaching for a gun."
Race, 542 So.2d at 351. See also Northern Insurance Co. v.Hampton, 510 So.2d 649 *Page 382 
(Fla.Dist.Ct.App.), review denied, 518 So.2d 1275 (Fla. 1987) (motorist's death did not arise out of the ownership, maintenance, or use of the uninsured vehicle; one motorist had shot the other motorist during an altercation that began when one driver made an obscene gesture at the other driver after the other driver had made a sudden lane change); Fowler v.State Farm Mutual Auto. Insurance Co., 548 So.2d 830 (Fla. Dist. Ct. App. 1989) (insufficient connection between the use of the insured's vehicle and the victim's injuries to effect coverage under an automotive liability policy where the insured shot the victim while he was sitting in his car following a near collision between the victim's car and the insured's vehicle); Rustin v. State Farm Mut. Auto. Ins. Co.,254 Ga. 494, 330 S.E.2d 356 (1985) (the insured's shooting and killing a motorist during a confrontation after the deceased's vehicle struck the rear bumper of the insured's vehicle did not arise out of the use of an automobile); Cummings v. State Farm Mut.Auto. Ins. Co., 408 Pa. Super. 381, 596 A.2d 1138 (1991) (injuries sustained as a result of a physical altercation between two drivers after an accident did not arise out of the maintenance or use of a motor vehicle); Stucky v. Long,783 P.2d 500 (Okla.App. 1989) (causal connection between use of motor vehicle and injuries suffered in fight after an automobile collision was too remote to invoke coverage under automobile liability policy); United Services AutomobileAssociation v. Ledger, 189 Cal.App.3d 779, 234 Cal.Rptr. 570
(1987) (insured's stabbing of another motorist who followed the insured five miles to complain about a sudden lane change did not arise out of the ownership, maintenance, or use of a vehicle; the stabbing occurred after both parties had exited their vehicles); State Farm Mut. Auto. Ins. Co. v. Fernandez,767 F.2d 1299 (9th Cir. 1985) (insured was not entitled to recover uninsured motorist benefits for a stabbing wound sustained in a confrontation with an uninsured motorist who had failed to dim his headlights).
This court also finds persuasive the analysis in Couch onInsurance 2d § 45:57 (rev. ed 1981):
 "The use of an automobile may result in a condition which is an essential part of the factual setting which later results in harm. Such antecedent 'use' of an automobile is distinct from the harm which thereafter arises from the condition created by the use of the automobile and such later harm does not arise from the 'use' of the automobile and is not covered; the mere fact that the use of the vehicle preceded the harm which was later sustained is not sufficient to bring such harm within the coverage of the policy."
(Emphasis added.) See also Couch on Insurance 2d § 45:78 (rev. ed. 1981) ("[w]hen the insured, through irritation or anger, strikes or injures another person, it has been held that such injury does not arise from the use of the insured automobile").
The authorities cited above recognize that there must be some causal connection between the use of a motor vehicle, as a motor vehicle, and the injury. Courts also recognize that, for an injurious act to be covered under automobile liability insurance provisions or uninsured motorist provisions, the act must have been within the contemplation of the insurer and the insured.
 CONCLUSION
We conclude that Skelton's Allstate policy provides no coverage for the injuries he suffered in the battery committed by Dell Wright. The injuries caused by Dell Wright did not arise out of the ownership, maintenance, or use of an automobile. Therefore, the circuit court erred in awarding uninsured motorist benefits under the policy. The judgment of the circuit court is reversed and a judgment is rendered for Allstate.
REVERSED AND JUDGMENT RENDERED.
HOOPER, C.J., and MADDOX, KENNEDY, and COOK, JJ., concur. *Page 383