On September 4, 1994, in Talledega, Alabama, Henry Wayne Batchelor and Chad Gaither met some friends in the parking lot of the Food World supermarket. The teenagers were spending their time "hanging out" and talking in the parking lot with a few other teenagers. A friend brought word to the small group that a fight was expected at a nearby McDonald's restaurant ("McDonald's"). The teenagers jumped into their vehicles and drove to McDonald's.
Henry and Chad were in the cab of Henry's pickup truck; their friends Larry Keith and Angela Farrington rode in the truck bed. When they arrived at McDonald's, they noticed one of the rumored fight participants, Perry Harkins. He was in a Nissan Stanza *Page 805 
automobile being driven by Vernon Lee Burdette, Jr. Vernon's girlfriend, Teresa Watson, was also in the vehicle. Henry and his friends parked their vehicles and waited for the fight. When the Nissan in which Perry was riding left the parking lot, the other vehicles followed.
Vernon soon noticed that the others were following him. The vehicles passed each other on the road as he drove. Finally, Vernon arrived at Old Hog Jowl Road, which is the road on which he lives. As he turned onto that road, he noticed that the three vehicles following him stopped and pulled off on the side of Jackson Trace Road.
When Vernon and his passengers reached his home, Teresa indicated that she was scared by the fact that the vehicles were following them. Because the Nissan Vernon was driving belonged to her, Teresa would be driving it home and would have to pass the group of vehicles gathered at the end of the road. Vernon promised that he would follow her home. But first, he sent Perry to a neighbor's house to request the assistance of Vernon's brother, Hiram David Burdette. Hiram and the neighbor's son, Kenneth Staples, agreed to ride with Vernon and Perry. Finally, before following Teresa home, Vernon and Hiram retrieved a .22 caliber rifle and a .30-06 rifle from their home. Vernon, Hiram, Perry, and Kenneth got into a Ford LTD automobile owned by the father of the Burdette brothers.
As the Nissan driven by Teresa turned from Old Hog Jowl Road onto Jackson Trace Road, the vehicles that had been following earlier again gave chase. Henry's truck was slow to begin the chase and was left behind with the Ford LTD. At that point, Hiram shot the .22 rifle into the air.
Vernon, in the LTD, overtook the truck and swerved in front of it; Vernon said he was attempting to stop the people in the truck from following Teresa. The truck swerved to avoid the LTD and managed to get around it. As the truck passed the LTD, Vernon stepped out of the vehicle and removed the .30-06 rifle. He fired three shots in the direction of the truck.
Those shots, or fragments of the bullets, injured Angela, Larry, and Henry. Angela later died from her injuries. Vernon and Hiram were each convicted of various charges, including murder, attempted murder, manslaughter, and discharging a firearm into an occupied vehicle, and they are presently incarcerated.
Rebecca Simmons Lee, individually and as administratrix of the estate of Angela Farrington; Larry Keith, a minor, by and through his father and next friend Robert Keith; Robert Keith and Barbara Keith, individually and as parents of Larry Keith, a minor; Henry Wayne Batchelor; Judy Rouse and Larry Rouse, individually and as parent and stepparent of Henry Wayne Batchelor; and Earl Wayne Batchelor, individually and as father of Henry Wayne Batchelor (collectively referred to as the "Parents") sued Vernon Lee Burdette, Jr.; Hiram David Burdette, a minor by and through his father and next friend, Vernon Lee Burdette, Sr.; Allstate Indemnity Company ("Allstate"); State Farm Insurance Companies ("State Farm"); American Security Insurance Company, Inc.; and fictitiously named parties. The parents alleged that the incident on September 4, 1994, resulted in wrongful death, personal injury, property damage, medical expenses, lost wages, and emotional distress. They requested damages of $10,000,000.
The parents sued Allstate because Henry Wayne Batchelor's truck, which is owned by his father Earl Wayne Batchelor, is insured by Allstate. The Allstate insurance policy has an uninsured/underinsured motorist ("UM") provision. That provision reads: "We will pay damages for bodily injuries, sickness, disease or death, which a person insured is legally entitled to recover from the owner or operator of an uninsured automobile. The injury must be caused by accident and arise out of the ownership, maintenance and use of the uninsured auto." The parents sued State Farm because Henry's mother and stepfather, Judy and Larry Rouse, have automobile insurance with State Farm, which covered Henry as a driver. The State Farm insurance policy also has a UM provision, which reads: "We will pay damages for bodily *Page 806 
injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle."
Allstate and State Farm (the "insurance companies") filed motions for summary judgment. They argued that the injuries complained of did not arise "out of the ownership, maintenance or use of an uninsured auto" and that they could not be required to pay uninsured motorist benefits to the parents. The trial court entered a summary judgment for the insurance companies, which it made final pursuant to Rule 54(b), Ala. R. Civ. P. The parents appealed to the Alabama Supreme Court, which transferred this case to this court pursuant to Ala. Code 1975, § 12-2-7(6). We affirm.
Our standard of review in cases involving summary judgments is de novo; we apply the same standard as applied in the trial court. A motion for summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment "must make a prima facie showing that . . . no genuine issues of material fact [exist] and that [it] is entitled to [a] judgment as a matter of law." Lee v. City of Gadsden, 592 So.2d 1036, 1038
(Ala. 1992). If the movant meets this burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by 'substantial evidence.' " Id. "Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). See West, 547 So.2d at 871 (Ala. 1989), and Bass v. SouthTrustBank of Baldwin County, 538 So.2d 794 (Ala. 1989), for further discussion of the application of the summary judgment standard.
Our supreme court has addressed the issue of an insured's ability to recover uninsured motorist benefits for bodily injury stemming from a criminal assault by a third party.See United States Fidelity Guaranty Co. v. Lehman,579 So.2d 585 (Ala. 1990), and Allstate Insurance Co. v. Skelton,675 So.2d 377 (Ala. 1996). Based upon our review of those cases and our review of the facts of this case, we affirm the summary judgment in favor of the insurance companies.
Lehman involved an attack on an automobile salesman by a person pretending to be a customer. The salesman was driving the "customer" to the customer's home to pick up a trade-in vehicle. In that case, the supreme court addressed the appropriate analysis for cases involving questions about whether an injury falls within uninsured motorist coverage. SeeLehman, 579 So.2d at 586.
 " 'A frequent question confronting the courts in determining whether a particular injury or accident is within the coverage provided by the "ownership, maintenance, or use" clause of an automobile liability insurance policy is the one of causal connection or relationship of the accident or injury to the ownership, maintenance, or use of a vehicle. The cases agree that a causal relation or connection must exist between an accident or injury and the ownership, maintenance, or use of a vehicle in order for the accident or injury to come within the meaning of the clause "arising out of the ownership, maintenance, or use" of a vehicle, and where such causal connection or relation is absent, coverage will be denied. The difficulty therefore relates mainly to the determination whether or not there was under the facts of the case the required causal relationship.' "
Id. (quoting Annot., Automobile Liability Insurance: What areaccidents or injuries "arising out of ownership, maintenance,or use" of insured vehicle, 15 A.L.R.4th 10, 17 (1982)).
Using the above-quoted analysis, the supreme court determined that, although the injuries to the automobile salesman occurred in a moving vehicle, the injuries themselves were not caused by any "use" of the vehicle. Id. Lehman was driving the customer to the customer's home in a vehicle owned by the saleman's employer. Id. at 585. The vehicle was uninsured. Id. The supreme court stated: "although Lehman happened to be attacked *Page 807 
while in a vehicle, the vehicle itself was merely the location of an attack that could have occurred anywhere." Id. at 586.
In Skelton, our supreme court was faced with a situation similar to that presented by this case: whether UM coverage covers a situation in which the driver of an uninsured or underinsured vehicle assaults the insured or his passenger.Skelton, 675 So.2d at 379. Skelton, an Allstate insured, was driving home from a funeral. Id. He and family friends, Elaine Mixon and her 16-year-old son, had attended the funeral together, but had driven separate vehicles. Id. at 378. Skelton was following the Mixon vehicle back to Mobile. Id. As they neared Mobile, another vehicle, driven by Milyce A. Wright and also occupied by her husband, Dell L. Wright, pulled out in front of the Mixon vehicle from an interchange. Id. The vehicles were travelling in the right lane of southbound traffic on Interstate Highway 65. Id.
The driver of the Wright vehicle began driving recklessly, slowing down suddenly and then, just as suddenly, speeding up.Skelton, 675 So.2d at 378. Mixon had to slam on the brakes when the Wright vehicle slowed. Id. At one point while following the Wright vehicle, Mixon flashed her lights. Id. As soon as it was safe, Mixon pulled her vehicle into the left lane to pass the Wright vehicle. Id. The Wright vehicle then sped up and passed the Mixon vehicle on the left shoulder of the highway. Id.
Dell Wright began throwing things out of the passenger-side window of the vehicle. Id. The Wright vehicle then moved beside the Mixon vehicle and forced it off the road onto the right shoulder of the highway. Skelton, 675 So.2d at 378. Mixon stopped her vehicle on the shoulder and picked up her automobile telephone. Id. The Wright vehicle had also stopped a short distance in front of the Mixon vehicle. Id. Dell Wright got out of the vehicle and approached the Mixon vehicle. Id. In his hand he held a pistol, which he aimed at Mixon, while shouting obscenities and threatening to kill her. Id. He then smashed Mixon's windshield with the butt of the pistol. Id.
Skelton witnessed the problems Mixon had with the Wright vehicle. Skelton, 675 So.2d at 378. He, too, stopped his vehicle a short distance from where the Wright vehicle had stopped on the shoulder of I-65. Id. He then approached the Mixon vehicle with the intent of assisting Mixon. Id. at 379. Dell Wright saw Skelton approaching and walked to meet him. Id.
When the two men met at a point near the rear wheels of the Wright vehicle, Dell Wright struck Skelton with the pistol on the left side of his head. Id. As Skelton staggered from the blow, Wright struck him again on the left jaw. Id. The Wrights got back into their vehicle and sped away, leaving a dazed and partially conscious Skelton on the side of the road. Skelton, 675 So.2d at 379. Mixon called the 911 emergency number on her automobile telephone. Id. Although Skelton survived the assault, he was seriously and permanently injured. Id.
Skelton sued Allstate, his insurer, requesting benefits under his UM coverage. Id. The trial court awarded benefits to Skelton, and Allstate appealed. Id. The Supreme Court focused on "whether Skelton's injuries arose 'out of the ownership, maintenance or use of an uninsured auto." ' Id. After a short discussion of Lehman, the court opined:
 "Wright's battery on Skelton was an intervening act that broke the causal connection between the use of the Wright automobile and the injury. A criminal act, such as the battery in this case, will break the causal connection because no reasonable standard would suggest that an automobile insurer intended to insure against such acts. When an insurance company writes an automobile policy, it covers foreseeable risks associated with the use of the covered automobile. Dell Wright's battery of Skelton was not a foreseeable risk associated with motoring. When Skelton purchased the automobile insurance policy, neither he nor Allstate could reasonably have foreseen the battery and the resulting injuries."
Skelton, 675 So.2d at 380. In short, the court indicated that, for a particular injury to be covered under the UM provisions of an automobile insurance policy, (1) "there must be some causal connection between the use of a motor vehicle, as a motor vehicle, and the injury" and (2) "the act [causing the injury] *Page 808 
must have been within the contemplation of the insurer and the insured." Id. at 382.
The facts of this case are largely undisputed, and the law of our state has been set out by our supreme court. That court has stated that there must be a causal connection between the injury and the "ownership, maintenance or use" of the uninsured automobile. Lehman, 579 So.2d at 586; Skelton, 675 So.2d at 382. In addition, the supreme court has stated that the act causing the injury must be an act "within the contemplation of the insurer and the insured." Skelton, 675 So.2d at 382. The injuries in this case were inflicted by a young man with a rifle in his hands. This court cannot hold that the actions of Vernon Lee Burdette were acts "within the contemplation of the insurer and the insured." The insurance policies at issue in this case, and their UM provisions, were not intended to cover such injuries. See id. at 380. Under the analysis used by our supreme court in Lehman and Skelton, we conclude that the trial court correctly entered the summary judgment for the insurance companies.
AFFIRMED.
ROBERTSON, P.J., and YATES, MONROE, and THOMPSON, JJ., concur.