THOMPSON, Judge.
The State of Alabama Home Builders Licensure Board (“the Board”) appeals from a judgment directing the Board to pay Leslie Teel and Dina Teel the sum of $50,000, a portion of an uncollected judgment in favor of the Teels against Match Builders, Inc., and A1 Barnett (hereinafter collectively referred to as “Match Builders”), from the Homeowner’s Recovery Fund (“the Fund”).[1]
*901 In April 1998, the Teels entered into a residential construction contract with Match Builders for the construction of a residence in Pike County. Match Builders completed construction of the residence in the fall of 1998, and the Teels and Match Builders submitted a “Settlement Statement,” dated October 13, 1998, to the United States Department of Housing and Urban Development.[2] At the time the Teels and Match Builders entered into the residential construction contract and during the period of time the residential construction was being performed, Match Builders was a licensee of the Board under the provisions of the home builders’ licensure law, § 34-14A-1 et seq., Ala.Code 1975 (“the Act”). However, during that period of time, the Pike County Commission (“the Commission”) had not yet elected to have Pike County covered under the provisions of the Act.
On October 25, 1999, the Commission adopted Resolution 00-3, irrevocably electing to have Pike County covered under the provisions of the Act. The Commission issued a public notice stating that its election was effective November 4, 1999, and that enforcement of the Act in Pike County would begin on November 4, 2000.
On January 12, 2000, the Teels sued Match Builders, alleging breach of the implied warranty of habitability, breach of express warranty, and fraudulent misrepresentation. On February 1, 2000, Match Builders filed a “Motion to Dismiss and Answer,” in which Match Builders denied the allegations in the Teels’ complaint and raised numerous defenses. On June 9, 2000, the Teels amended their complaint to include claims alleging breach of contract and negligence or wantonness in failing to construct their residence in accordance with the prevailing standards in the construction industry.
On March 4, 2002, the case was called for trial. The Teels appeared; Match Builders failed to appear.[3] The trial court considered ore tenus evidence concerning the merits of the Teels’ claims and the amount of their damages. The trial court then entered a default judgment in favor of the Teels and against Match Builders, awarding $105,000 in compensatory damages, $100,000 in punitive damages, and $50,000 for mental anguish.
On August 12, 2002, the Teels filed a verified claim against the Fund in accordance with § 34-14A-15, Ala.Code 1975, for payment of a portion of the uncollected judgment. On September 13, 2002, the Teels filed a motion requesting that the trial court set a hearing on their verified claim. The Board filed an objection to payment of the verified claim, alleging, among other reasons, that the Act did not apply to residential construction in Pike County at the time the Teels and Match Builders entered into the residential construction contract and during the period of time the residential construction was being performed; in support of its objection, the Board submitted a copy of Resolution 00-3 and the public notice regarding the adoption of that resolution.
On February 3, 2003, the trial court held a hearing and heard oral arguments; on that same date, the trial court entered an order finding:
“1. Section 34-14A-1 et seq. generally provides for licensing residential *902 home builders by the Board. The legislative intent is well-stated in the act.
“2. Section 34-14A-16 provides that, ‘[t]he provisions of this chapter shall not apply to any county the population of which is 30,000 or less ... unless the county commission irrevocably elects to have the county covered by this chapter.’
“3. [Match Builders] ... was licensed by the Board.
“4. The Pike County Commission had not elected to be covered by the provisions of the Act until after the [Teels’] cause of action had accrued.
“5. Section 34-14A-16 permits a county of less than 30,000 to require that a person engaged in residential home building in that county ... be licensed, by the Board.
“6. The Act does not preclude an injured homeowner from recovering damages proximately caused by .a licensed homebuilder through the ... [F]und (Section 34-14A-15) simply because the homeowner resides in a county that has not elected to be covered by the licensing provisions of the Act.”
(Emphasis in original.)
On February 19, 2003, the Teels filed a motion requesting that the trial court order the Fund to pay them $50,000. On April 5, 2003, the trial court entered a judgment directing the Board to pay the Teels $50,000 from the Fund. The Board appeals.
The Board contends on appeal that the Fund is not liable for the Teels’ claim because that claim is based on residential construction that occurred before the Commission elected to have Pike County covered under the provisions of the Act. The Teels argue that it was not necessary for the Commission to have elected to have Pike County covered by the provisions of the Act because the residential construction was performed by a licensee of the Board.[4]
In this case, it is undisputed that the residential construction occurred before the Commission elected to have Pike County covered by the provisions of the Act and that Match Builders was a licensee of the Board at the time the residential construction was performed. “[W]here the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the [trial] court’s judgment carries no presumption of correctness.” Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala.1996). This court reviews the application of law to the facts de novo. Id.
This is a case of statutory construction, and the dispositive issue is whether the Fund created under § 34-14A-15 is liable for claims involving residential construction performed by a licensee in a county that had not elected to be covered under the Act at the time the residential construction contract was made and the residential construction was being performed.[5]
“In construing a statute, this court looks to the plain meaning of the words used by the Legislature. Our supreme court has said:
*903 “ ‘ “Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.” ’
“Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998) (quoting IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)).
“ ‘It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the law is, not to say what it should be. Therefore, only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers.’
“DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 276 (Ala.1998).”
W.L.S. v. K.S.S.V., 810 So.2d 777, 779 (Ala.Civ.App.2001). Additionally, “[sjeetions of the Code originally constituting a single act must be read in pari materia in order to ‘produce a harmonious whole.’ ” Ex parte Jackson, 625 So.2d 425, 428 (Ala.1992) (quoting 2A Norman J. Singer, Sutherland Statutory Construction § 46.05 (5th ed.1993)).
Section 34-14A-15, which created the Fund, and § 34-14A-6(7), Ala.Code 1975, and § 34-14A-16, Ala.Code 1975, which address the applicability of the Act in counties with populations of less than 30,-000 according to a most recent federal decennial census, are derived from the same Act of the Legislature. Act No. 92-608, § 6, § 15, and § 16, Ala. Acts 1992. Section 34-14A-15 provides, in pertinent part:
“The board is authorized to establish a Homeowner’s Recovery Fund from which an aggrieved homeowner may recover actual economic damages, not including interest and court costs, sustained within the State of Alabama as the direct result of conduct of a licensee in violation of this chapter or the rules and regulations of the board.”
(Emphasis added.) Section 34-14A-6(7) provides:
“(7) The provisions of this chapter shall not apply in those counties having populations of less than 30,000 according to the most recent decennial census provided however the county commission of such counties may irrevocably elect to have their respective counties covered by the provisions of this chapter in the same fashion and under the same conditions as shall be applicable at the time of the election.”
Similarly, § 34-14A-16 provides:
“The provisions of this chapter shall not apply to any county the population of which is 30,000 or less according to the most recent federal decennial census, unless the county commission of the county irrevocably elects to have the county covered by this chapter.”[6]
The plain language of § 34-14A-15 provides that the Fund is liable for claims within the State of Alabama that are the *904 direct result of the conduct of a licensee in violation of the Act. Thus, in order for the Fund to be liable, the residential construction at issue must be covered by the Act. Sections 34-14A-6(7) and 34-14A-16 provide that the Act is not applicable to a county having a population of less than 30,000 according to the most recent federal decennial census until the county commission of such a county irrevocably elects to have itself covered by the provisions of the Act. Thus, residential construction occurring in those counties is not covered by the Act until an election is effected in accordance with the Act. Construing §§ 34-14A-15, 34-14A-6(7), and 34-14A-16 together, we conclude that the intent of the Legislature, as revealed by the plain language of those statutory provisions, was to exclude from the Fund’s liability any claim involving residential construction performed by a licensee in a county that had not elected to be covered under the provisions of the Act at the time the residential construction contract was made and the residential construction was being performed; a licensee cannot violate the Act in a county in which the Act does not apply.
Accordingly, the judgment of the trial court is reversed, and the cause is remanded for the trial court to enter a judgment consistent with this opinion.
REVERSED AND REMANDED.
PITTMAN and MURDOCK, JJ., concur.
YATES, P.J., concurs in the result, without writing.
CRAWLEY, J., concurs in the result, with writing.

. Act No. 2002-72, § 1, Ala. Acts 2002, amended § 34-14A-15, Ala.Code 1975, to refer to the recovery fund created under that statutory provision as the "Homeowner's Recovery Fund.”

. At the time of the closing on the house, the Teels and Match Builders discussed certain punch-list items relating to the residential construction, and Match Builders agreed to address those items.

. Although the Board had entered an appearance on behalf of the Fund on June 21, 2000, the Board did not participate in the trial of the case.

. Both parties agree that the election of the Commission to have Pike County covered under the provisions of the Act is not to be applied retroactively. See State Home Builders Licensure Bd. v. Grzelak, 705 So.2d 406 (Ala.Civ.App.1997) (holding that § 34-14A-15, which created the Fund, could not be applied retroactively to a claim based on residential construction that occurred before the enactment of the Act).

. Because we find this issue to be dispositive, it is not necessary that we address the other issues raised on appeal.

. Act No. 2002-72, Ala. Acts 2002, added the phrase "unless the county commission of the county irrevocably elects to have the county covered by this chapter.”