THOMPSON, Judge.
This case arises out of an automobile accident between Henry Burt, Jr., and Phillip Cumbie. The record indicates that at the time of the accident Cumbie was test-driving an automobile owned by Capitol Chevrolet and Imports, Inc. (“Capitol Chevrolet”). The record further indicates that at the time of the accident Capitol Chevrolet had at least $2,000,000 in liability insurance coverage; Cumbie did not have his own automobile liability insurance, but he was covered under Capitol Chevrolet’s policy in the amount of $25,000 by .virtue of the fact that he was driving an automobile owned by Capitol Chevrolet.
On January 10, 2002, Burt and his wife, Joy Burt (“Joy”), sued Capitol- Chevrolet and several fictitiously named defendants, alleging two counts: (1) that Capitol Chevrolet negligently or wantonly entrusted one of its vehicles to an incompetent driver, Cumbie, and (2) that Capitol Chevrolet negligently or wantonly failed to confirm that Cumbie had liability insurance before permitting him to drive that vehicle. The *693 Burts alleged that as the proximate result of the defendants’ negligence, wantonness, or recklessness, Burt suffered a number of personal injuries; the Burts also alleged that Joy suffered a loss of consortium.
Thereafter, on April 10, 2002, the Burts amended their complaint and added their uninsured-motorist (“UIM”) insurance carrier as an additional defendant; the Burts’ UIM insurance carrier is Shield Insurance Company (“Shield”).[1] The record indicates that in their amended complaint the Burts adopted Count I of their original complaint and substituted a new Count II, alleging that Cumbie was an uninsured motorist and that Shield was liable for damages “to the extent of the liability of ... Cumbie and to the extent of the limits of [their] uninsured motorist insurance coverage.” The record indicates that the amount of coverage that was available to Burt under the UIM provisions of his insurance policy was $20,000.
On May 12, 2003, Shield filed a motion for a summary judgment pursuant to Rule 56, Ala. R. Civ. P.; that summary-judgment motion was based on a legal theory not relevant on appeal.[2]
The record indicates that in June 2003 Burt entered into a pro tanto settlement with Capitol Chevrolet, in which Capitol Chevrolet paid Burt $225,000 to settle any claims he had against it. On June 30, 2003, “upon [Burt’s] motion to dismiss,” the trial court entered an order dismissing with prejudice the action against Capitol Chevrolet and all other defendants except Shield.
On July 9, 2003, Burt filed a response to Shield’s summary-judgment motion.[3] Thereafter, on July 21, 2003, Shield supplemented its summary-judgment motion, setting forth the undisputed facts as follows:
“1. ... Burt has settled the claims he has against Capitol Chevrolet for $225,000.
“2. Capitol Chevrolet was insured by Chrysler Insurance under a general liability policy for $1,000,000....
“3. Chrysler paid $225,000.
“4. In addition to being insured under a general liability policy, Capitol Chevrolet was insured under an umbrella policy which provided insurance coverage over and above the $1,000,000 general liability limits.”
Shield argued that it was entitled to a summary judgment because, it claimed, Burt could not present evidence that he suffered damages in excess of the policy limits available to him, and therefore, pursuant to § 32 — 7—23(b)(4), Ala.Code 1975, he could not recover any UIM benefits from Shield.
In his response to Shield’s supplement to its summary-judgment motion, Burt argued that the liability insurance coverage of Capitol Chevrolet or of any other joint tortfeasor other than Cumbie was not relevant to his claim for UIM benefits from Shield. Burt argued that Cumbie was the uninsured motorist and that only liability insurance available based on the wrongful *694 conduct of Cumbie was relevant to his claim against Shield.
On August 25, 2003, the trial court entered an order granting Shield’s summary-judgment motion based on Burt’s failure to exhaust the liability limits of all bodily-injury insurance policies available to him. The case action summary indicates that on September 18, 2003, a motion to alter, amend, or vacate the judgment was filed by Burt, along with a “concession” in support of the motion to alter, amend, or vacate; the record does not include a copy of that motion or that concession.
On October 21, 2003, the trial court entered an amended order, which found, in pertinent part:
“2. [Burt] has conceded that Capitol Chevrolet ... whom [Burt] sued for negligently entrusting their vehicle to the uninsured motorist, [Cumbie,] has at least $2,000,000 in liability insurance covering Capitol Chevrolet (but not the uninsured motorists) for the accident in which [Burt] was injured. [Burt] has further conceded that he would not be entitled to a verdict sufficient in size to exhaust or exceed Capitol Chevrolet’s $2,000,000 in liability coverage.
“3. Accordingly, [Burt] has failed to exhaust the limits under all bodily injury insurance policies available to [him] and therefore, the Motion for Summary Judgment filed by ... Shield ... is due to be, and hereby is, GRANTED, and the case is dismissed.”
Burt timely appealed. Burt contends that the trial court erred in entering a summary judgment in favor of Shield. Burt argues that “[t]he determinative issue is whether insurance policies ‘available to an injured person’ [under § 32-7-23(b)(4) ] include policies of a joint tort-feasor, as opposed only to policies providing insurance based on the wrongdoing of the uninsured or underinsured motorist.” Burt argues that
“[a]n injured plaintiff does not need to exhaust the liability insurance covering a joint tort-feasor (whose liability is not based on the wrongdoing of the underin-sured driver) before he can reach his underinsured motorist benefits which he claims based on the negligence and wantonness not of the joint tort-feasor, but rather on the underinsured driver.”
Shield, on the other hand, argues that the determinative issue is “whether the policy limits under a policy of insurance insuring the owner of a vehicle are available within the meaning of [§ 32-7-23].” Shield argues that “[t]he liability limits under a policy insuring the owner of a vehicle are ‘available’ within the meaning of [§ 32-7-23], and therefore, [Burt] must exhaust these limits before recovering from his UIM carrier.”
This is a case of statutory interpretation; it involves the application of law to undisputed facts. This court reviews the application of law to facts de novo. Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala.1996) (“[W]here the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the [trial] court’s judgment carries no presumption of correctness.”). Both parties to this appeal acknowledge that there is no Alabama case addressing the issue in this case and that this case involves an issue of first impression.
Relating to the rules of statutory construction, this court, in W.L.S. v. K.S.S.V., 810 So.2d 777 (Ala.Civ.App.2001), stated:
“In construing a statute, this court looks to the plain meaning of the words used by the Legislature. Our supreme court has said:
*695 “ ‘ “Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.” ’
“Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998)(quoting IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)).
“ ‘It is trae that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the law is, not to say what it should be. Therefore, only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers.’
“DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 276 (Ala.1998).”
W.L.S., 810 So.2d at 779.
The statute at issue in the present case is § 32-7-23; that section provides, in pertinent part:
“(a) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in subsection (c) of Section 32-7-6, under provisions approved by the Commissioner of Insurance for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom;....
“(b) The term ‘uninsured motor vehicle ’ shall include, but is not limited to, motor vehicles with respect to which:
[[Image here]]
“(4) The sum of the limits of liability under all bodily injury liability bonds and insurance policies available to an injured person after an accident is less than the damages which the injured person is legally entitled to recover.”
(Emphasis added.)[4]
Applying the rules of statutory construction, we conclude that § 32-7-23 is unambiguous and must be construed as written. See W.L.S., supra. Section 32-7-23 provides that UIM coverage is for the protection of persons who are “legally entitled to recover damages from oivners or operators of uninsured motor vehicles because of bodily injury.” (Emphasis added.) Under § 32-7-23(b)(4), the term “uninsured motor vehicle” includes motor vehicles with respect to which “[t]he sum of the limits of liability under all bodily injury liability bonds and insurance policies available to an injured person after an accident is less *696 than the damages which the injured person is legally entitled to recover.”
It is undisputed that Capitol Chevrolet owned the vehicle that Cumbie was driving at the time of the accident. Further, the Burts sued Capitol Chevrolet because Capitol Chevrolet owned the vehicle. Burt conceded that Capitol Chevrolet had at least $2,000,000 in liability insurance for the accident in which he was injured and that he would not be entitled to a verdict sufficient in size to exhaust or exceed Capitol Chevrolet’s $2,000,000 in liability insurance coverage. Therefore, pursuant to the plain language of § 32-7-23, the limits of Capitol Chevrolet’s liability were available to Burt. Burt failed to or was unable to exhaust those limits. Accordingly, the trial court’s entry of summary judgment in favor of Shield is due to be affirmed.
AFFIRMED.
YATES, P.J., and CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., dissents, without writing.

.In their amended complaint, the Burts incorrectly named “Cotton States” as their UIM insurance carrier; the correct name is "Shield Insurance Company,” and Shield Insurance Company identified itself as the Burt’s UIM insurance carrier in its responsive pleadings.

. Shield's May 12, 2003, summary-judgment motion was based on Burt’s failure to notify Shield that he had given Cumbie a release from all claims against Cumbie relating to the accident; however, after Shield filed that summary-judgment motion, the Burts presented evidence that Cumbie was insolvent.

. See note 2.

. We note that pursuant to subparagraph (b)(4) of § 32-7-23, an '‘underinsured motorist” is included in the statutory definition of "uninsured motorist.” See Lowe v. Nationwide Ins. Co., 521 So.2d 1309, 1309 n. 1 (Ala.1988).