37 So.3d 832 (2009)
David YOUNG and Debbie Young
v.
Kathy LEDFORD.
2080473.
Court of Civil Appeals of Alabama.
November 6, 2009.
Christopher D. Albert, Weaver, for appellant.
Submitted on appellant's brief only.
PITTMAN, Judge.
This appeal, transferred to this court by the Alabama Supreme Court pursuant to Ala.Code 1975, § 12-2-7(6), involves the competing rights of adjoining landowners as to a tree whose trunk is located on their common boundary, an issue of apparent first impression under Alabama law.[1] Based upon our review of applicable American precedents, we reverse the judgment of the Randolph Circuit Court and remand the cause for further proceedings.
Kathy Ledford, who with her husband Roger owns a lot in Randolph County upon which a vacation house is located, filed an action in the trial court seeking a judgment *833 declaring that she and her husband have the right to remove a pine tree that, according to a recent survey, lies on the boundary between Ledford's lot and a lot owned by David Young and Debbie Young. Ledford alleged that the tree, which is located slightly over 10 feet from Ledford's house, "poses a danger and threat to" that house and that "[a] strong wind against the tree could cause it to fall on the home and could cause damage to the [house] as well as serious injury to any occupants." The Youngs admitted the location of the tree, but they averred that the tree was "a true boundary line tree" and contended that it could not "be harmed or cut by" landowners on either side of the boundary line. After a brief ore tenus proceeding, during which Ledford, her husband, the Youngs, and a forester retained by the Youngs all gave testimony, the trial court entered a judgment declaring that Ledford and her husband could remove the tree at their convenience, taking steps to minimize damage to the Youngs' lot. In pertinent part, the trial court opined:
"[Ledford] and her husband wish to cut the tree because they are afraid that the tree will fall on their home. If the tree falls on their home, since the tree is located so close to it, the home would likely be severely damaged. Further, and perhaps more importantly, if [Ledford and her husband] were asleep or even in their home and the tree fell on it, [they] or anyone located within the home could suffer serious injury or death.
". . . .
"Under Alabama law, a land owner may remove any roots or limbs that protrude onto his property without consequence, even if the tree that the roots and limbs are attached to are located on another's property. Further, a land owner has a right to remove any trees or other growth on his property up to the property line, and this right extends to the center of the earth and into the sky. Thus, without recourse or consequence, [Ledford] could cut into the tree to the property line and then cut from that point to the center of the earth and into the sky. Because 19 inches of the tree's 28-inch diameter measurement is located on [Ledford's] side of the property line, [Ledford], therefore, could completely remove more than one half of the tree up to her property line.
". . . .
"Since [Ledford] unquestionably has the right to remove any portion of the tree that is located on her side of the property line and since doing so would likely kill the tree, the Court is of the opinion that [she] should be allowed to completely remove the tree to ensure that her property and the health and well being of anyone located in her home are protected."
The Youngs timely appealed from the trial court's judgment. Their appellate brief posits that the trial court improperly applied the holding of Harding v. Bethesda Regional Cancer Treatment Center, 551 So.2d 299 (Ala.1989), in a manner that allows the unilateral removal of a boundary-line tree by one landowner and that the proper rule of decision is supplied by caselaw from other states decided in the same factual setting. Ledford, for her part, has not favored this court with a brief. We agree with the Youngs that the trial court's conclusions of law are the subject of de novo review. See Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala. 1996) (indicating that when essentially undisputed facts are presented and the parties' controversy involves questions of law for the court to consider, the trial *834 court's judgment carries no presumption of correctness).
We start with the proposition that Alabama law recognizes the right of a landowner to cut vegetative protrusions, such as branches or roots, extending onto that landowner's property from a plant that is located on an adjacent landowner's property. In Drummond v. Franck, 252 Ala. 474, 41 So.2d 268 (1949), a complaint alleged, among other things, that the respondents had "cut or caused to be cut limbs from the trees of several complainants extending over" a particular alley owned by the respondents. 252 Ala. at 477, 41 So.2d at 271 (emphasis omitted). In addressing the competing rights of the parties, the Alabama Supreme Court observed, without citation of authority, that "[f]or aught that appears from the [complaint], the limbs cut from the trees of some of the complainants were limbs over-hanging respondents' property" and that one of the respondents thus had "had a right to remove them." 252 Ala. at 479, 41 So.2d at 273. The holding of Drummond was construed in Harding as allowing a landowner to remove roots extending from a tree located on an adjoining lot so long as no trespass was committed:
"Given the right to remove tree limbs overhanging his property, an analogy can certainly be made regarding a property owner's right to remove roots extending onto his property. This is especially true in light of the landowner's right to excavate on his own land. To deny such a right would create an oppressive restriction on the use of one's own land.
"The doctrine of cujus est solum ejus est usque ad coelum et ad inferos (`to whomsoever the soil belongs, he owns also to the sky and to the depths') may have been qualified insofar as air flight and oil and gas law is concerned; however, it still extends to air space that can be occupied by limbs of trees and, we hold today, to the depths that can be occupied by roots of trees."
Harding, 551 So.2d at 302 (citations omitted).
However, neither Drummond nor Harding analyzed the rights of contending landowners as to what the Youngs have called a "true boundary line tree." Although no Alabama case has addressed the issue, there is near uniformity among American jurisdictions as to the status of such a tree: if the trunk of a tree is located on a boundary line between lots owned by adjacent landowners, each landowner is deemed to own part of the tree, usually under a tenancy in common. See F.S. Tinio, Annotation, Rights and Liabilities of Adjoining Landowners as to Trees, Shrubbery, or Similar Plants Growing on Boundary Line, 26 A.L.R.3d 1372 (1969). An apt statement of the applicable legal principle appears in Cathcart v. Malone, 33 Tenn.App. 93, 229 S.W.2d 157 (1950):
"`A tree standing on the division line between adjoining proprietors, so that the line passes through the trunk or body of the tree above the surface of the soil, is the common property of both proprietors as tenants in common. This is another instance where the maxim, "he who owns land owns to the sky above it," is qualified and made to give way to a rule of convenience more just and equitable, and more beneficial to both parties. To hold in such case that each is the absolute owner of that part of the tree standing on or over his own land would lead to a mode of division of the tree when cut that would be impracticable and would give the right to one to hew down his part of the tree to the line, and thereby destroy the part belonging to the other. The rule is therefore *835 settled that in such case, the parties are tenants in common.
"`A landowner who cuts or destroys a tree growing on the boundary line without the consent of the adjoining owner is liable in trespass to the latter for such injury for although, ordinarily, trespass will not lie by one tenant in common against his cotenant, yet when one tenant in common destroys the subject of the tenancy, trespass will lie at the suit of the injured party.'"
33 Tenn.App. at 95-96, 229 S.W.2d at 158 (quoting 1 Am.Jur. Adjoining Landowners § 58).
The trial court in this case, taking its cue from Harding, declared that Ledford should be permitted to remove the boundary-line tree at issue because, the trial court opined, her ownership of the adjacent land gave her rights extending to the center of the earth and the sky above it. In the special case of a boundary-line tree, however, each adjacent landowner has ownership rights that cannot be trumped by the other's desires in the manner suggested by the trial court's judgment. In other words, Ledford, contrary to the premise of the trial court's judgment, cannot "cut into the tree to the property line and then cut from that point to the center of the earth and into the sky" with impunity.
We agree with the Youngs that the parties to the current litigation each have ownership rights as to the boundary-line tree and that its unilateral removal, over the Youngs' objection, would unjustifiably deprive the Youngs of their property rights in and to the tree. Because the property rights of the Youngs as to the tree were not given effect by the trial court in this case, we must reverse the trial court's judgment permitting Ledford and her husband to unilaterally remove the tree. We remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMAS, J., concurs.
THOMPSON, P.J., concurs specially, with writing, which MOORE, J., joins.
BRYAN, J., concurs in the result, with writing.
THOMPSON, Presiding Judge, concurring specially.
I concur fully in the main opinion. I write specially to point out that, although the main opinion correctly applies the general rule regarding boundary-line trees, some jurisdictions have recognized exceptions to the general rule when, for example, a boundary-line tree constitutes a nuisance. See, e.g., Lemon v. Curington, 78 Idaho 522, 525-26, 306 P.2d 1091, 1092-93 (1957). See generally 1 Am.Jur.2d Adjoining Landowners § 18 (2005) ("Generally a boundary line tree is the common property of both abutting owners and neither has the right to damage or destroy the tree without the consent or permission of the other. However, this rule is qualified by the right of an abutting owner to use his or her property in a reasonable way and, conversely, not in an unreasonable way. The damages suffered by or threatened to one of the owners from boundary line trees may entitle him or her to remove the trees, or warrant a court to authorize removal." (footnotes omitted)).
In the present case, the record reflects that the action was pleaded, tried, and determined on the basis of Kathy Ledford's contention that she was entitled to remove the boundary-line tree at issue merely because its trunk is located, in part, on her property. She did not plead, and the trial court did not determine that the boundary-line tree at issue in this case *836 constituted a nuisance for which an exception to the general rule set forth in the main opinion might apply. As a result, the question whether Ledford might avoid the application of the general rule based on a potential exception to that rule is not before us.
MOORE, J., concurs.
BRYAN, Judge, concurring in the result.
Because the record does not contain any evidence proving that the tree at issue posed a danger to Kathy Ledford's house, I concur in the result. However, had the record contained such evidence, I would have voted to affirm the trial court's judgment. See, e.g., Lemon v. Curington, 78 Idaho 522, 306 P.2d 1091 (1957) (affirming a judgment that authorized the plaintiffs to remove a boundary-line tree that posed a danger to their house but enjoined them from removing another boundary-line tree that did not pose a danger to their house).
NOTES
[1] We surmise from the decision of the Alabama Supreme Court to transfer the case that that court has determined, notwithstanding the clear existence in this case of a "novel legal question," that the resolution of that question will not have "significant statewide impact." Ala.Code 1975, § 12-2-7(6)b.